AO 91 (Rev. 11/11)  Criminal Complaint

| | | |
|---|---|---|
| AUSA: | C. Barrington Wilkins | Telephone: (313) 226-9100 |
| Special Agent: | Stanley J. Williams | Telephone: (313) 910-0251 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
Antujuan Tye

Case No.  Case: 2:22−mj−30212
Assigned To : Unassigned
Assign. Date : 5/4/2022
Description: RE: SEALED MATTER (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  December of 2019 - September of 2021  in the county of  Wayne  in the  Eastern  District of  Michigan SD , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possessed and Distributed a Controlled Substance, namely methamphetamine |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
Complainant's signature

Stanley J. Williams, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: May 3, 2022

_____
Judge's signature

City and state: Detroit, Michigan

Hon. David Grand, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

Affiant, Task Force Officer Stanley Williams, being duly sworn, deposes and states the following:

1. Affiant has been employed by the Hazel Park Police Department since March 2001 as a sworn law enforcement officer. Affiant has been a Task Force Officer (TFO) of the Drug Enforcement Administration (DEA) since April 2018 and is a law enforcement officer empowered to conduct investigations and make arrests for Violations of Title 21, United States Code.

2. In December of 2019, officers met with a Canton Police Department confidential Source; hereinafter referred to as CPD-1, to discuss the drug trafficking operation of Antujuan TYE. CPD-1 notified agents that TYE is selling distributable amounts of narcotics, specifically crystal methamphetamine. CPD-1 indicated TYE resides at 19690 Xxxxx Avenue in Detroit, Michigan. I obtained a Michigan driver's license photograph of TYE and showed the photograph to CPD-1, who positively confirmed the photograph as the individual CPD-1 knows as "TYE". CPD-1 provided telephone number (xxx) xxx-0412 as TYE's cell phone.

3. On January xx, 2020, DEA agents met with CPD-1, who at the agent's direction, placed a monitored phone call to (xxx) xxx-0412. Agents were able to see CPD-1's phone screen to confirm that the number CPD-1 dialed was the same given for TYE. During the call CPD-1 arranged the purchase of narcotics from TYE. Following the call agents provided CPD-1 $350 in Official Advanced Funds (OAF) in order to purchase 1 ounce of crystal methamphetamine from TYE. At approximately x:xx a.m., CPD-1 arrived at 19690 Xxxxx Avenue Detroit, Michigan (TYE's residence) and went to the side door of location and entered. CPD-1 then exchanged the $350 OAF for the crystal methamphetamine. CPD-1 then exited the location.

4. On January xx, 2020, DEA agents met with CPD-1 to coordinate a 2nd controlled purchase of approximately 3 ounces of crystal

methamphetamine from TYE in exchange for $1,050 OAF.  At the agent's direction, CPD-1 placed a monitored phone call to (xxx) xxx-0412, TYE's cell phone.  CPD-1 advised TYE that he/she would be arriving at 19690 Xxxxx Avenue Detroit, Michigan soon.  At approximately x:xx a.m., CPD-1 arrived at location.  At approximately x:xx a.m., CPD-1 exited location and met with agents at a pre-determined neutral location.  CPD-1 stated the crystal methamphetamine was already packaged in two (2) separate baggies and on the kitchen counter of the residence when the CPD-1 entered.  CPD-1 stated he told TYE he needed one more ounce of crystal methamphetamine and TYE told him he would be right back as he exited the side door of the Target Residence.  The CS stated a couple minutes later, TYE returned, and he had two (2) baggies of crystal methamphetamine with him and gave one (1) of them to the CPD-1.  CPD-1 stated he then gave TYE $1,050 OAF

5. On February xx, 2020, DEA agents met with CPD-1 to coordinate a 3rd controlled purchase of approximately 6 ounces of crystal methamphetamine from TYE in exchange for $2,100 OAF.  At approximately xx:xx p.m., at the direction of agents, CPD-1 placed a phone call to (xxx) xxx-0412, TYE's cell phone.  CPD-1 notified TYE he/she needed 6 ounces of crystal methamphetamine and TYE stated he would get ahold of his guy and let him know.  CPD-1 placed another phone call to TYE at approximately x:xx p. m. and TYE advised that he had the crystal methamphetamine.  CPD-1 arrived at 19690 Xxxxx Avenue Detroit, Michigan at approximately x:xx p.m.  CPD-1 stated that TYE provided only 2 ¼ ounces of crystal methamphetamine and stated he must have misunderstood the original amount they agreed on.  CPD-1 stated $780 of the OAF was exchanged for the 2 ¼ ounces and TYE contacted his supplier to get the rest. TYE stated he would have the rest around x-x:xx p.m.  At approximately x:xx p.m., CPD-1 contacted agents and stated he/she received a phone call from TYE and the latter stated he had the rest of the crystal methamphetamine.  At approximately x:xx p.m., agents met with CPD-1 and gave CPD-1 $1,320 OAF to purchase the remaining 3 ¾ ounces of crystal methamphetamine.  CPD-1 arrived at 19690 Xxxxx Avenue Detroit, Michigan at approximately x:xx p.m. and exchanged $1,320 OAF for 3 ¾ ounces of crystal methamphetamines with TYE.

6. On September xx, 2021, at approximately xx:xx a.m., agents met with CPD-1 to coordinate a controlled purchase of approximately 6 ounces of crystal methamphetamine from TYE in exchange for $1,500 OFA.  At approximately xx:xx a.m., at the direction of agents, CPD-1 placed a phone call to (xxx) xxx-0412, TYE's cell phone, and notified TYE he/she was on the way to 19690 Xxxxx Avenue Detroit, Michigan.  At approximately xx:xx a.m., agents observed CPD-1 arrive at location and make contact with TYE in the front yard.  At Approximately xx:xx p.m., agents observed TYE retrieve a clear plastic baggie from the trunk of a vehicle parked in front of location and then both CPD-1 and TYE enter the residence through the front door.  After receiving approximately 94.6 grams of methamphetamines from TYE for $940 OAF CPD-1 left location meeting with agents and turning over the narcotics and remaining $560 OAF.

7. Based on the aforementioned facts, your Affiant maintains that probable cause exists to believe that Antujuan TYE possessed and distributed a controlled substance, namely methamphetamine, in violation of Title 21, United States Code, Section 841 (a)(1).

I declare under penalty of perjury the foregoing to be true and correct to the best of my knowledge and belief.

_____
TFO Stan Williams
Drug Enforcement Administration

Sworn to and subscribed before me this ^ and/or by reliable electronic means
3rd day of May, 2022.

_____
Honorable David R. GRAND
United States Magistrate Judge
Eastern District of Michigan

May 4, 2022

4